**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| MARCIA E. MARCO, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:06-CV-521-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Marcia E. Marco brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Marco applied for disability benefits on October 15, 2002, alleging disability commencing March 17, 2001. (Tr. 97). She met the insured status requirements at all times relevant to the Commissioner's decision. (Tr. 117). After the Social Security Administration denied her application for benefits both initially and on reconsideration, Marco requested a hearing before an

administrative law judge (the "ALJ"). On June 8, 2004, ALJ Ward D. King held a hearing, which Marco and her attorney attended. (Tr. 375). The ALJ issued an unfavorable decision in July 2004, (Tr. 25), but the Appeals Council vacated that decision and remanded the case for further administrative proceedings. (Tr. 36-38).

The ALJ conducted a supplemental hearing on February 9, 2006 in Fort Worth, Texas. Marco was again represented by counsel. (Tr. 347). On February 22, 2006, the ALJ issued a second unfavorable decision in which he found that Marco was not disabled because her residual functional capacity (RFC) did not prevent her from performing her past relevant work as a hairdresser. (Tr.11-19). The Appeals Council denied Marco's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §

404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309

F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.    ISSUES

    1.    Whether the ALJ properly considered all of Marco's nonexertional impairments;

    2.    Whether the ALJ properly assessed Marco's credibility.

D.    ADMINISTRATIVE RECORD

    1.    Medical History

Marco was diagnosed with Crohn's disease in 1977, and she has undergone two abdominal surgeries for Crohn's colitis and ileitis.[1] (Tr. 136, 174). She was hospitalized in May 2001 for an exacerbation of Crohn's colitis and ileitis with symptoms consistent with a bowel obstruction. (Tr. 135). Her symptoms subsided with treatment, and diagnostic studies showed no clear evidence of bowel obstruction. Her treating physician noted that she had responded to medication and done well despite having the disease for over twenty-three years. She was discharged with prescriptions for Pentasa and Prilosec. (Tr. 136).

Marco went to the emergency room on October 6, 2002 with complaints of a three-day history of abdominal pain. (Tr. 163). On October 9, 2002, Marco was seen at the local health clinic

---

[1] Crohn's disease is a chronic inflammatory disease of the gastrointestinal tract. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 514 (29th ed. 2000). Colitis refers to inflammation of the colon, and ileitis refers to inflammation of the ileum portion of the small intestine. *Id.* at 375, 875.

as a new patient, and a gastrointestinal consultation was ordered. (Tr. 243-45).

Marco underwent a consultative internal medicine examination with Stevan Cordas, D.O., on March 19, 2003. (Tr. 174). Marco recounted a history of chronic Crohn's disease. She was currently taking Nexium and Pentasa for her condition, but reported intermittent blood in her stool. She also complained of rheumatic-type symptoms, including back pain and bilateral knee pain. Her back pain was worse when standing, bending, or kneeling. She also complained of fatigue and reported muscle weakness in her arms and paresthesias[2] in her fingers. (Tr. 174-75). She admitted having intermittent feelings of sadness and problems focusing, concentrating, and sleeping.

Cordas diagnosed chronic Crohn's disease and major depression. He also opined that Marco had probable enteropathic arthropathy related to Crohn's disease.[3] (Tr. 176). Cordas opined that Marco's fatigue was related both to depression and her underlying inflammatory condition, which probably caused a certain degree of malnutrition due to diarrhea and malabsorption. (Tr. 176). Cordas noted that Marco exhibited a positive hyperabduction sign and positive Adson's sign consistent with bilateral thoracic outlet syndrome,[4] but Marco's neurological evaluation was negative. Marco had a weakly positive Tinel's sign on the right, and her grip strength was reduced to 40% of normal. She had mild limitation of motion in her neck and lumbar spine. (Tr. 176).

Marco sought emergency treatment on April 9, 2003 for complaints of worsening abdominal

---

[2] Paresthesia is an abnormal touch sensation, such as burning, prickling or formication, often in the absence of an external stimulus. *Id*. at 1324.

[3] Enteropathy is a general term for any disease of the intestine. *Id*. at 601. Arthropathy is a term referring to joint disease. *Id.* at 152.

[4] Thoracic outlet syndrome refers to a variety of neurovascular syndromes resulting from compression of the subclavian artery, the brachial plexus nerve trunks,, or the axillary or subclavian veins. *Id*. at 1769.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5**

pain, diarrhea, and constipation. (Tr. 241-42). She was given pain medication and discharged from the emergency room. An esophagogastroduodenoscopy (EGD) was performed in September 2003 and showed some areas of possible ulceration of Crohn's disease, but no active Crohn's disease. (Tr. 237). An EGD performed April 6, 2004 showed a cobblestone pattern in the mucosa throughout the gastric body. (Tr. 249). Notations in Marco's treatment record indicate that the treating specialist discharged her from his care in April 2004 due to non-compliance issues. (Tr. 284, 295).

A colonoscopy performed in December 2004 showed abrasions and scarring of the anal canal with active disease. (Tr. 294). Another colonoscopy performed in December 2005 showed active ileitis, and the biopsy was compatible with mild active ileitis and possible quiescent inflammatory bowel disease.[5] (Tr. 298, 308).

Marco also has a history of carpal tunnel syndrome and back pain. (Tr. 225-27). She had surgery for right carpal tunnel syndrome on September 28, 2000, with excellent results. (Tr. 202, 316). She complained of finger stiffness during a check-up with her treating physician in October 2003. (Tr. 234). Electromyography (EMG) studies were performed in December 2005 to evaluate Marco's complaints of numbness in her left hand. No involvement of the right hand was reported. Manual muscle testing of her upper extremities was within normal limits, but she did exhibit decreased sensation in the tips of the first two fingers on her left hand. (Tr. 316). The diagnostic studies showed mild left carpal tunnel syndrome, with no motor involvement noted. (Tr. 318).

---

[5] Inflammatory bowel disease is a general term for inflammatory disease of the bowel of unknown etiology, including Crohn's disease. *Id*. at 518.

Marco participated in physical therapy and underwent trigger point injections in 2000 for neck and low back pain, and reported improvement in her pain level after treatment. (Tr. 209-17). Marco's bone density studies were consistent with osteoporosis. (Tr. 274). Marco also underwent an exercise treadmill tests on August 19, 2005 and achieved a total workload of eight metabolic equivalent units (METS).[6] Her exercise tolerance was fair, and her exercise effort was assessed as sub-optimal. (Tr. 321).

2.   Administrative Hearings

At the first administrative hearing in June 2004, Marco testified that she was born December 27, 1953. (Tr. 379). She completed high school and cosmetology training. She had stopped working full-time as a hair stylist because of diarrhea, abdominal pain, and weakness in her arms and shoulders, but her employer had also closed the salon where she worked. (Tr. 381-82). Marco testified that she continued to work as a hairdresser a few hours each week doing hairdressing at the homes of three of her clients. (Tr. 379).

Marco testified that she had accidents a couple of times each week when she would fail to get to a restroom in time and soil her clothes. (Tr. 388). Marco also reported episodes of rectal bleeding that occurred approximately four times a week. (Tr. 393). Marco testified that she attended church occasionally, but she sat at the back so she could get out easily if she needed the restroom. She testified that she had used the restroom at the hearing office three times in the two

---

[6] The intensity of physical activity is measured by the metabolic equivalent, or MET, level: Physical activity that burns more than 6 METs is considered vigorous-intensity activity. CENTER FOR DISEASE CONTROL AND PREVENTION, PHYSICAL ACTIVITY FOR EVERYONE: PHYSICAL ACTIVITY TERMS (Mar. 22, 2006), http://www.cdc.gov/ nccdphp/dnpa/physical/measuring/met.htm

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

hours she had been at the office. (Tr. 403).

In addition to Crohn's disease, Marco complained of neck pain and shoulder pain that caused her arms to go to sleep, especially her dominant right arm. (Tr. 394). She testified she was unable to write for long periods, she needed help tying her shoelaces, and she had difficulty with kitchen tasks like peeling or chopping vegetables. (Tr. 394-95). She estimated that she could sit or stand for fifteen or twenty minutes. (Tr. 396-97). She testified that she had difficulty lifting her arms overhead or holding her arms up to blow-dry her hair. (Tr. 399-400).

Marco's husband testified that he did the family's laundry and much of the housework because his wife was unable to do it. (Tr. 405). He testified that they occasionally visited his mother in Colorado, but they had to stop often to allow his wife to use the bathroom. He noticed that the trip could take up to twice as long when his wife was with him than it did when she was not accompanying him. (Tr. 406). He also testified that he had to tie her shoe laces, and he had noticed that Marco had difficulty holding cigarettes or utensils and had trouble chopping, stirring, or mixing food. (Tr. 407).

At the supplemental hearing in 2006, Marco testified that she was working five or six hours a week as a hairdresser. (Tr. 351). She testified that her Crohn's disease was active again according to her latest colonoscopy, although her treatment regimen was unchanged. (Tr. 353). With respect to notations in the record that she was not compliant, Marco explained that she was unable to take all of her medication on a regular basis because of the expense. (Tr. 353). She was able to get her prescriptions at a lower price through the county health system, but she was limited to five prescriptions at a time. Marco testified that she still experienced abdominal pain a couple of times

each week even when she was taking the full dose of her medications. (Tr. 362). She used Darvocet and rest to alleviate the pain. Marco also testified that she had bouts of diarrhea as often as five or six times a day, and approximately six times a month she would have an accident and soil her clothes because she was unable to make it to the restroom. (Tr. 364).

Marco testified that her carpal tunnel syndrome was better than it had been when she was working, but she still described cramping and numbness in her hands that caused her to drop things. (Tr. 365). She had difficulty curling her client's hair, and she was unable to work as quickly as she did in the past. (Tr. 366). Marco testified that she had trouble drying her own hair because her hands and arms would go numb. (Tr. 367). She also reported neck, back and knee pain, which she treated with heating pads or cold packs. (Tr. 366).

3.   ALJ Decision

The ALJ found that Marco's continued part-time work as a hairdresser did not constitute the performance of substantial gainful activity after her alleged onset date. (Tr. 12). He further found that Marco's Crohn's disease, mild left carpal tunnel syndrome, and osteoporosis constituted a severe combination of impairments, but did not meet or equal the severity of any listed impairment. (Tr. 12). After summarizing the objective evidence and Marco's subjective complaints, the ALJ found that Marco retained the residual functional capacity (RFC) for light work, except she was limited to only occasional stooping or crouching and she required ready access to a bathroom. (Tr. 17-18). The ALJ further found that Marco's RFC did not precluded her from performing her past relevant work as a hairdresser as that job was generally performed in the national economy. (Tr. 18). Accordingly, the ALJ ended his analysis at Step Four of the sequential evaluation process and

concluded that Marco was not disabled or eligible for disability insurance benefits. (Tr. 18-19).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

E.  DISCUSSION

Marco contends that the Commissioner's decision is not supported by substantial evidence because the ALJ did not properly evaluate all of her nonexertional limitations.[7] More specifically, Marco contends that the ALJ did not explain why he imposed no functional limitations as a result her bilateral thoracic outlet syndrome and residuals of her carpal tunnel syndrome.

The ALJ considered Marco's medical history, including the assessment of bilateral thoracic outlet syndrome and her history of carpal tunnel syndrome; however, he also noted that she had a negative neurological assessment and only mildly limited range of motion according to the consultative examination. In addition, at least one physician had reported "excellent" results from Marco's carpal tunnel release on her dominant right hand, and recent electrodiagnostic testing showed only mild carpal tunnel syndrome in her non-dominant hand. (Tr. 15-16). Nonetheless, the ALJ decided that Marco's abdominal problems as well as her neck, back, hand, and knee pain affected her lifting ability, but found that a light lifting restriction with no more than occasional stooping or crouching would accommodate Marco's impairments. (Tr. 17-18). Although Marco would impose further limitations in her functioning, particularly with respect to her ability to manipulate objects, she has not demonstrated that the ALJ's assessment of her residual functional

---

[7] Marco also complains that the ALJ found she had a severe combination of impairments, but then failed to identify which of these impairments were vocationally significant and which were not, rendering the court unable to determine which impairments are severe. The Social Security Act and the implementing regulations direct the Commissioner to consider whether an individual has a severe impairment or severe combination of impairments that could be the basis for eligibility. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1520(a), (c). The Commissioner is to consider the combined effect of all of the individual's impairments without regard to whether any impairment, if considered separately, would be of sufficient severity. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. Moreover, if a medically severe combination of impairments is found, the combined impact of those impairments is to be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. The ALJ adhered to these directives and did not err at Step 2 of the sequential evaluation process by assessing a severe combination of impairments without specifying whether any such impairments were severe standing alone.

capacity lacks the support of substantial evidence.

Marco also contends that the ALJ did not comply with the Appeals Council remand order. The Appeals Council found, among other deficiencies, that the record lacked vocational evidence regarding the effect of Marco's nonexertional limitations on her ability to perform her previous work. On remand, the ALJ found the same limitations as reported in his original decision, but Marco asserts that the ALJ still did not cure the inadequate vocational record noted by the Appeals Council. Marco complains that there is still insufficient vocational evidence regarding the impact of her need for ready access to the bathroom on her ability to work as a hairdresser.

As a threshold matter, the ALJ's compliance or noncompliance with an Appeals Council order is not an independent ground for disturbing the Commissioner's decision. Judicial review of the administrative decision is confined to whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Moreover, the Appeals Council directed the ALJ to obtain vocational expert evidence only if warranted by the expanded record.[8] (Tr. 37).

On remand, the ALJ expounded on his determination that Marco required ready access to a bathroom. He explained that ready access to a bathroom contemplated a bathroom at or reasonably near the work site, and that typical office work conditions would suffice. He also noted that his limitation was not intended to preclude Marco from work requiring her to stay in one location for

---

[8] In fact, the Appeals Council questioned the ALJ's determination that Marco required ready access to a bathroom because the record did not document chronic incontinence. (Tr. 36).

a set period as required for assembly or production work. (Tr. 18). Given this explanation, the ALJ's determination that Marco could still perform her past relevant work as a hairdresser is not at odds with the requirement that she have "ready access" to a bathroom.[9]

Marco also contends that the ALJ did not properly evaluate the credibility of her subjective complaints of her symptoms and their effect on her ability to function. In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. § 404.1529(b); SOCIAL SECURITY RULING 96-7p. Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529. Factors to consider include (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) the medication used to alleviate the pain; (5) other treatment measures; and (6) other relevant factors. 20 C.F.R. § 404.1529(c). A claimant's statements as to pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. §423(d)(5)(A).

The ALJ found that Marco had some exertional and nonexertional limitations as a result of her impairments, but not to the disabling degree she alleged. The ALJ's explanation also demonstrates that he considered Marco's credibility in accordance with the criteria outlined in the

---

[9] Marco does not contend that hairdressing requires stooping or crouching more than occasionally.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 13**

administrative regulations and rulings. *See generally* 20 C.F.R. § 404.1529(b); SOCIAL SECURITY RULING 96-7p. Marco complains that the ALJ did not expressly state that he was giving weight to the various factors that the regulations identify as relevant; however, the ALJ reviewed Marco's participation in daily activities like driving, reading, and playing computer games; her use of medications and allegations of her non-compliance; and the consistency of her statements with the objective medical record.

Marco also complains that the weight the ALJ gave her non-compliance was inappropriate because her non-compliance was a result of financial inability to afford all of her medications. An inability to afford treatment, and for which free community services are unavailable, is an acceptable reason for failing to follow prescribed treatment to remedy a disabling impairment.[10] SOCIAL SECURITY RULING 82-59. *See also* 20 C.F.R. §§404.1530, 416.930. The Fifth Circuit likewise recognizes that a medical condition that can be remedied, but by treatment that the claimant cannot afford, continues to be disabling under the law. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). The regulations and cases, however, presuppose objective evidence of a (treatable) disabling impairment. Evidence that Marco has a disabling impairment, with or without the use of medication or other treatment, is lacking in the

---

[10] An individual may be found to have failed to follow prescribed treatment when the following four conditions exist:

1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA); and
2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

SOCIAL SECURITY RULING 82-59.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 14**

present case. *Cf. Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989).

Social Security Ruling 82-59 does not restrict the use of evidence of noncompliance for other purposes during the disability hearing, i.e., to assess credibility. *See, e.g., Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ did not find Marco's impairments to be so severe as to be disabling in the first place, nor did he deny benefits because of her failure to follow prescribed treatment to remedy a disabling condition. Instead, her non-compliance was just one of several factors the ALJ considered in his assessment of her credibility and residual functional capacity for light work.

Marco also contends that the ALJ did not give sufficient weight to the supporting testimony that her husband provided. The Fifth Circuit has declined to prescribe any rigid or set formula for the ALJ to follow when articulating the reasons underlying his decision on disability. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ outlined the testimony that both Marco and her husband provided in explaining why he found that Marco's various subjective complaints, which her husband corroborated during his testimony, were inconsistent with the objective evidence. (Tr. 17). Although Marco might prefer that the ALJ be more specific in identifying the weight or credibility assigned to her spouse's testimony, the ALJ's decision reflects that he considered the testimony presented, which is all that is required. *See* SOCIAL SECURITY RULING 96-7p (addressing the evaluation of a claimant's credibility). *See also* 20 C.F.R. § 404.1513(d) (listing other sources that may be considered in assessing severity of claimant's impairments and their effect on ability to work).

The ALJ sufficiently complied with the regulations and rulings that govern the proper assessment of a claimant's credibility. The ALJ's residual functional capacity assessment also incorporated all of the nonexertional limitations the ALJ found were supported by the record. Marco has not shown that the Commissioner's decision is a result of legal error or unsupported by substantial evidence.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until March 20, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d

1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until March 20, 2007, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED FEBRUARY 26, 2007.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE